The first case is T.W. v. New York State Board of Law. May it please the Court, my name is Mary Vargas and I represent T.W. who is present in the courtroom today. I would like to reserve, with the Court's permission, two minutes for rebuttal. This case is about educational testing. T.W. is a gifted Harvard Law graduate who requires accommodations in educational testing as the result of a traumatic brain injury. Despite comprehensive medical evaluations and a history of receiving exactly the accommodations she sought, the New York Board of Law Examiners did what it has a very long history of doing. It denied T.W. basic accommodations. It required her to fail first, to fail twice, in order to demonstrate that she needed the accommodations she was requesting before finally granting them. And by that time, T.W. had lost her job at a prestigious big law firm in New York City and the damage was done and that damage continues today. In T.W. 1, this Court held what the Board of Law Examiners was not. T.W. 1 held that it was not a part of the Courts of Original Jurisdiction and that it was not a recipient of federal financial assistance. Today, we are asking the Court to find what the Board of Law Examiners is. Didn't we rule in that earlier appeal, or at least I think your adversary argues that we ruled, that the Board had not waived its 11th Amendment immunity as to the Rehabilitation Act claim? Doesn't that determination, isn't it predicated on the conclusion that the Board is entitled to immunity in the first place? Respectfully, Your Honor, it is not. The question of whether an entity is subject to Section 504, be it public or private, derives from the question of whether it's a recipient of federal financial assistance. Had this case been about one of the multiple of other testing entities, for example, the National Board of Osteopathic Medical Examiners, the National Board of Medical Examiners, the National Conference of Bar Examiners, any of those private entities, had it been about those entities, the determination would have been, would have followed the same line. It would have looked at whether it was, the entity was a recipient of federal financial assistance. I'm sorry, but you seem to be arguing sort of different legal issues. But I thought, what was the procedural posture? Wasn't there a motion to dismiss in the first case? Yes, there was a motion to dismiss. And what did the district court do? The district court found in favor of the plaintiff. Meaning denied the motion to dismiss, right? Denied the motion to dismiss. And we reversed that, meaning it comes out the opposite way, meaning you grant the motion to dismiss, right? Correct. And how do you grant a motion to dismiss unless you find, contrary to what you're arguing now? How do you grant a motion to dismiss? How can it be granted? Because this court found that the Board of Law Examiners was not a recipient of federal financial assistance. But I thought that's a waiver issue. Respectfully, Your Honor, it's an issue of whether they get federal funding or whether they're a part of an entity. And what's the consequence of that finding? The consequence of that finding is that the Section 504 claims were dismissed. I guess, let me just go right to the point. Doesn't all of that become totally irrelevant if they're not an arm of the state? Whether the Board of Law Examiners was an arm of the state or not was not briefed or decided. No, no, no, but I understand that. My question is, isn't, under your view, TW1 completely pointless if they weren't an arm of the state? No, the question was not before the court, respectfully, Your Honor. Okay, let me, I probably am not phrasing my, so the question was, Bob, you go ahead and argue that. The issue, if I can try to address the court's question, the issue in TW1 was, again, whether it was a recipient of federal financial assistance. And why is that relevant? The relevance of that was whether Section 504 applied or not. Right, and why would it? It considered So the first question, it was Section 504, not Title II, that was at issue in the first case. Isn't that correct? I'm sorry, Your Honor, I didn't hear what you said. I'm sorry. It was 504, not Title II, that was at issue in that case. Correct, correct. This is the first time that the Title II claims have come before the court. This is also the first time that the arm of the state issue has been briefed or argued by the parties. Now, in TW1, the court did use, in dicta, the term arm of the state, but the court did not engage in the required analysis under Mancuso to determine whether it was an arm of the state for purposes of having sovereign immunity. But, counsel, can't you prevail even if it's an arm of the state if the immunity was abrogated? Yes, Your Honor, we can. We view the first issue as whether the Board of Law Examiners is an arm of the state because if it's not, then we don't reach the abrogation issue. If the court does determine that Bull is an arm of the state, then the court would proceed to the question of whether Title II immunity was validly abrogated in the context of educational testing presented in this case. Now, I'm happy to address the Mancuso factors if the court would like to consider more about that, or I'm happy to move on to the abrogation. Why don't you move on to the abrogation issue? Thank you, Judge Livingston. So the abrogation issue, every circuit court that has decided the issue in the context of educational settings has held that abrogation was valid. The First Circuit, the Third Circuit, the Fourth Circuit, and Constantine, which involved a law student who needed accommodations in testing very similar to this case, although it was against a university. All of those cases found that the right at issue, though not fundamental in the context of education, was sufficiently important that abrogation was found to be valid. Now, your adversary argues that the chief purpose of the bar exam is not educational but one aspect of a licensing process. I guess my question is if we were to agree with him on that issue, is that determinative of your argument? Well, this case really sits at the intersection of two rights. It sits at the intersection of education, and it sits at the intersection of access to the courts, which was obviously addressed in Tennessee v. Lane. Where this case does not sit is in the context of professional licensing, as Bull alleges. Board of Law Examiners is not a licensing agency. They do not grant licenses. They do not remove licenses. They do not discipline attorneys. What they do is develop the tests to determine whether a law student has learned what they needed to learn in law school. That's why the Board of Law Examiners was originally set up within the education system in the State of New York as a sundry educational board. It was then moved into the judiciary, but its purposes didn't change at all. And the board itself acknowledges that the bar exam is what really dictates education in the State of New York. And how can this not be an educational right if students who go to New York law schools don't have an opportunity to demonstrate what they know on the bar exam? This is a test of law learning. I'm not sure the bar exam tested anything I learned in law school. So this would be no different in terms of the rationality of what the Board of Law Examiners proposes than if the bar exam didn't allow ramps into the bar exam, the denial of these very basic testing accommodations that Congress was profoundly concerned about, both when it passed the Americans with Disabilities Act and when it amended the Americans with Disabilities Act. In fact, not only is there a history of scores of examples of discrimination and barriers to people with disabilities, particularly in the education context, in the context of the provision of public services, but when the ADA was amended in 2008, Congress went so far as to specifically reference this agency. The Board of Law Examiners was specifically referenced in the hearings to determine whether amendment of the ADA was necessary because there is a profound history of discrimination by testing entities, whether it's the medical examiners, which has come up in the Dean case and some of the other cases in this court, whether it's the bar exam. If you cannot demonstrate what you know, you don't have an opportunity to pursue your career, to show your learning. And so there is a profound history of discrimination. And I would just note that we are standing in the very state where, in my lifetime, Judith Heumann, who was the Assistant Secretary of the U.S. Department of Education, was told in my lifetime that she couldn't go to public New York City schools because they felt that her wheelchair rendered her a fire hazard. The idea that there is no history of discrimination in public services, in education, in New York, is simply false. In 2018 and 2019, there were only 68 law students in the entire state of New York with disabilities. To suggest that that is not demonstrative of a significant barrier in education is simply impossible to conceive. And I would address also the issue of Ex parte Young. The district court erred in holding that TW was not entitled to declaratory and injunctive relief, even if the Board of Law Examiners has sovereign immunity. She has alleged in her complaint that the Board of Law Examiners maintains a record of her bar exam failures. They concede in their briefing that they do, although they maintain that it is confidential. I would maintain that in the lobby of my hotel room last night, I was able to determine whether TW passed the bar exam or not on the Board of Law Examiners' public website, .org, not .gov. Aren't they prohibited from talking about the two times she failed? That's what we're seeking. We're seeking expungement and disavowal. But aren't they barred from giving that information? They are not. The Board of Law Examiners, on their .org independent entity website, maintains a list of all of the students, I think as far back as 2008, who had passed the bar exam. So all you need to know is the year that a student graduated law school to check the list and determine whether they passed or failed. Oh, wait, wait, wait. So they did not disclose. I thought you were saying that you looked up on the website and you found the two times she failed. You're saying one could deduce that by making assumptions that people take the bar exam immediately after graduating, and if they made that assumption about your client and so when she passed. Yes, that's a fair point. But then people would have to assume how many times she took it? I mean, I don't even remember from the record. Did she take it in the fall and then the spring? She took it three times. No. But was it the fall, the spring, the fall? Did she take it every single time it was offered until she passed? She took it July 2013, July 2014, and February of 2015. Okay. So under your theory, someone could assume she took it three times and also tried it in February and failed or something, right? And that would be a false assumption. That's a fair point, Your Honor. Okay. I just want to be clear about what they're disclosing and what you're saying. One could infer, and I'm just illustrating how we don't know what people would infer. That's a fair point in terms of what I could access from the lobby of the hotel. However, the Board of Law Examiners acknowledges that they maintain these records. They say they're confidential. However, these records exist. She must acknowledge them when she's asked. She has a duty of candor and cannot say anything other than what the official version is. I understand that point. I don't understand the website point. Okay. She also, these records under New York law can be released even without her permission or knowledge. So this is not significantly different from the situation in Constantine. Can I just ask you, is your view that the declaratory injunctive relief have to rise and fall together, that they're either both retrospective under one view or, in your view, they're both prospective? I don't think that they do. Or do you think there's a way to distinction? I think it is possible to make a distinction between the two forms of relief. Could you articulate what that arguable distinction might be? Sure. So I think in terms of the injunctive relief, I think that's an easier, frankly, an easier point. It is no different than the educational institutions that maintain grades. Those are confidential under FERPA and potentially, you know, in other ways. But they maintain the existence. And when somebody alleges that that record of failure, that grade, or the record of failure of the bar exam is inhibiting their career prospects, that's prospective. But counsel, you talked about a duty of candor. Wouldn't this candidate have to answer to what happened when she left the firm? She would, Your Honor. And I think the point from TW's perspective is there is a far different point when you say to an employer that you were subject to discrimination and, as a result, your bar examination results were expunged and disavowed, as opposed to saying that you failed the bar exam two times. It says something different about your qualifications to obtain the job. And I would add that if the issue is that there's something additional that the court wants to know, frankly, this complaint was filed in 2016. That was a long time ago. And if the court had questions about how this was continuing to impact her career, then the appropriate remedy was not to forever dismiss her case, but to allow her an opportunity to amend the complaint to explain what has happened in the last seven years and how it continues to harm her or not. And at that point, it would be an appropriate determination. What the district court did left this young woman without remedy. There is no remedy under the district court decision at all when the Board of Law Examiners denies law students the opportunity to demonstrate what they learned in law school, to demonstrate what they know. And returning to the licensing issue for a moment, as I said, Boehl is not a licensing entity. It simply isn't. There are multiple qualifications under New York law that prompts that have to be satisfied for the court of appeals to admit somebody to practice law. One of them is taking the bar exam. Another one of them is graduating from an accredited law school. This is classic educational abrogation at its very heart. Thank you. We'll hear from your adversary. Thank you, Your Honors. Good morning or good afternoon. May it please the Court. Dennis Fan on behalf of the State of New York. Congress, in enacting the ADA, neither identified a threatened constitutional guarantee with respect to the bar exam, nor amassed a legislative record to support abrogating 11th Amendment immunity for New York's administration of the bar. Because Congress has not validly set aside the Board of Law Examiners' immunity for these purposes, this Court should affirm. I do want to briefly, for a couple sentences, just address the arm of the State issue. We think it's not just the decredible language and it's not just the fact that this Court's prior decision said that the Board is an arm of the State that shares in its immunity. The entire Rehab Act analysis, if you go through that analysis, what it basically was was analyzing what part of the State the Board fell within. The Court went through and it said there's three parts of the New York judiciary. There's the Courts of Original Jurisdiction, there's the Court of Appeals, there's the Appellate Division. And the Court said we think that it's probably part of the Court of Appeals. So I just wanted to remind the Court that it's not simply that one line that we're talking about, but the Court's entire analysis, which is necessarily predicated on a finding that the Board indeed had immunity. And just turning to the ADA issue about whether Congress validly aggregated immunity, I think what is important from our perspective is that the Board conducts professional licensing and has an integral role in the State's attorney admission process, which is very distinct from educational testing. There's other cases within the professional licensing arena, including Gutman from the Tenth Circuit, where it found that medical licensing was not validly aggregated under the ADA. This case is just like those sorts of cases. When you engage in the sort of bar examination testing, you're not diagnosing somebody's strengths and weaknesses for some pedagogical reason. If this plaintiff cannot urge the State to not claim its sovereign immunity, what kind of relief could she ever get from anyone? There's all sorts of other routes for an individual such as this. First, the Board has administrative review procedures. So if you don't have the accommodations that you want, you can seek review in the Board, and you can ask for further accommodations within that process. So that happened here. And on the third try, the Board accommodated her requests, and she passed. Doesn't that suggest to you that if they had accommodated her requests earlier, she might have passed on the first try? I can't make that sort of assumption. It could also be assumed that she had more experience with the bar and further time to study for the bar. But Your Honor's question brings up a point about what use, perhaps, law school would be if somebody couldn't go and become a lawyer. And the Supreme Court has rejected that same line of reasoning. Garrett was all about employment in the public sector, and one could simply argue that what point would having education and having disability rights in education have if you couldn't engage in employment later on in your career? I'm sorry. Can I just back you up just to make sure I understood your answer to Judge Puller's question? She was asking what are the remedies. I had taken her question, rightly or wrongly, to mean what remedies would she have now. You were talking about administrative procedures. I assume that you were referring to requests that she could have made at the time she was taking the bar exam. Were you also suggesting that there is presently an administrative review process for her to go back and redo or undo? Not redo, but to expunge those failures or something? No, there's no administrative process for that. In terms of the things that she's asking about now, the remedies she's seeking, there's no other remedy for her for that other than this lawsuit. Now, you may be arguing that under the 11th Amendment you don't get it, and so the answer is no. There is no remedy. Not everything has a remedy. But that would be different from you saying there are alternative administrative remedies. So which is it? It's what Your Honor was pointing out, that there is no current remedy in court because of the 11th Amendment immunity. At the time, she could have gone through the administrative process. Before, not after having taken the exam. But that does get to... Hang on, I just want to be clear. Are you saying before taking the exam, not after taking the exam? That's correct. Okay. And that gets to a critical point because this is an individual who has now passed the bar exam, which is why many of the forms of relief that we're looking at are properly characterized as retrospective relief rather than prospective relief. If this were somebody who had not yet passed the bar exam and you wanted to change something in the future with respect to you that could affect you individually, that would be an entirely different sort of matter. My colleague on the other side did say a few times that this had nothing to do with professional testing and that the bar examination had nothing to do with professional testing. I just want to point, Your Honors, to page 31 of the Joint Appendix, which is paragraph 85 of her complaint, where if I read it, as an entity that offers examinations related to professional licensing, certification, or credentialing, the defendants are required to conduct the bar examination with respect to the ADA accommodations. So I just want to point out that even this plaintiff in the course of this litigation has taken the position that this is a matter of professional licensing. Being a law student, it's very different than being a lawyer. When you go into the bar examination, you're not learning at that moment. You're getting tested. You're trying to achieve the minimum competence that's necessary to enter into the profession. You're not trying to go in and learn about your strengths and weaknesses so that you can go back to class and figure out what you did wrong, figure out what you need to learn more about, and figure out what clinics you need to take. That's all done. But even if this court were to think that the bar examination somehow was the sort of locus of some sort of constitutional rights, such as the courthouse in Lane was the locus of some constitutional rights, there just has not been the sort of congressional record here as there was in cases like Garrett. Now, the quantity and the quality of the examples within the congressional record just are not there. Other sites, for instance, a footnote within a congressional report. The other site cites a few examples of cosmetology or chiropractors and discrimination potentially in those settings. But those settings are entirely different than the sort of professional licensing scheme that we have here. Now, it may be the case that Congress, if it had looked further into the issue, would find other instances of discrimination, but it's incumbent upon Congress in the first instance before aggregating states' 11th Amendment immunity to make those findings to begin with. Because Congress has all sorts of avenues that it can influence policy, change how disability accommodations are made. Why isn't it enough to aggregate the states' immunity when they talk about educational services by a public entity? I'm looking for the exact phrase. Isn't that enough? That's not enough, Your Honor, for two really general reasons. One is that this case just is not similar to the educational cases because when you're taking a bar examination, which is what this case is about, you're not being educated. You are being solely tested. But what good is your education at a fine New York State law school if you can't take the bar exam and ultimately practice law in New York State? So just one very quick factual thing. This individual did not go to a New York State law school. But even setting that aside, there's many reasons why you would get an education, why you would go to a school. But one of them should not be that you're disabled. They should not be prohibited from taking the test because they're disabled. Isn't that correct? And so even if you thought that educational testing, again, if you thought that educational testing and the type of professional licensing that we have here are at least similar in nature, what you would still need is the sort of congressional record where Congress made those findings that said, you know, I think as Congress that this is what we're targeting. We're targeting professional licensing now. Can you tell me, counsel, how the 1st, 3rd, 4th, and 11th Circuit found that Congress, notwithstanding that disability, was enough for the state to surrender its immunity? There's a really easy reason. For instance, within the ADA, within the congressional statutory findings, they list out education as one of the arenas in which the ADA is targeting and attempting to aggregate immunity. Or rather, not aggregate immunity, but the ADA is targeting. But it doesn't say the same thing about professional licensing. And in fact, the Supreme Court in Garrett says it doesn't say the same thing about employment even, where it could be equally argued that what would be the point of having an education if you can't be employed down the road. So what we're saying is that Congress needs to draw that distinction. Congress needs to make those sorts of findings. But it obviously did in the other circuits. Constantine, I think it's in the 4th Circuit, George Mason Law School. So there, they found that Congress had done enough. Within the context of education, and again, Your Honor, this Court has never decided that question of whether in a suit against an educational entity, such as a school or a state university, this Court has explicitly reserved that question about whether aggregate immunity. But your argument, nevertheless, is even if those circuits are right and that Congress has abrogated state immunity in the context of higher education, that the bar exam is not higher education. That's right. Professional licensure, all those cases may be correct, but that doesn't really speak one way or the other. In your view, if we accept your view that this is professional licensure as opposed to education, right? That's right. I see I'm out of time. I'll answer the question. I just want to point out one thing. Even if you look at those other cases, such as Constantine in the 4th Circuit and those other cases, those cases are explicitly, very explicitly about, quote, the administration of higher education programs. That is the issue that's being litigated in those cases, and your Honor is correct that this case is not about the administration of a higher education program. A particular plaintiff here does not complain about any sort of classes or educational programs that were given at the time. She complains about the administration. What were these other states that I mentioned? Weren't those bar exam cases? Those were not bar exam cases, Your Honor. Well, 4th is, right? The 4th Circuit? No. And the 11th Circuit? That's not correct, Your Honor. Those are not bar examination cases. Those are cases against state university systems, if I'm understanding this as having read the same cases. And the only professional licensing case that we have here with respect to abrogating immunity found in the medical licensing context, Gutman in the 10th Circuit, that the professional licensing exam was. Could you briefly address the district court's holding as to standing to obtain injunctive relief? We think the easiest way to think about the standing issue really is that this isn't seeking any sort of prospective ongoing relief and that it hasn't identified any sort of prospective harm. A plaintiff hasn't asserted or even alleged that there is some employer out there who would ask a member of a bar, somebody who has already passed the bar exam, about their past bar exam failures. She has alleged only two things. One, that firms do care that somebody hasn't passed the bar, and so her firm cared about that and terminated her pursuant of her firm's own policy. And then the second thing alleged is that because she wasn't able to get the experience in the past, other firms are not willing to hire her. Of course, the Board of Law Examiners does not control either law firm policies about how many times somebody can fail the bar in the past, nor can the Board of Equalities, through any sort of prospective relief, make up for the fact that she wasn't able to get the sort of experience that she had in the past. Could I ask you, is there an analytical distinction here between asking, I guess the way it's been framed, does she have standing? In other words, an injury in fact, right? Which is, I understand you're disputing that she has an injury in fact, and she's saying no. This track record of having been fired and having other employers who are interested in this, that's an injury in fact. And then the redressability question, understanding Article III standing, which is, you know, is there anything we could do to fix that or ameliorate that? And her argument is, well, if you tell the board that they have to expunge this, then I can truthfully give an explanation that will mitigate the harm. Is that the same analytical structure that's involved in figuring out whether something is prospective relief under Ex parte Young? Where Ex parte Young, I understand, you have to find an ongoing violation of law by the state. I think it's very closely related. Yeah, that's why I'm asking, is it different in any way, analytically? And maybe they all line up the same way, that you find injury and redressability and you find an ongoing violation. But in this case, do you necessarily? How do we think about that? Is that how we ask? Is there an ongoing violation? Do we ask whether there's injury and redressability? The best way to think about it, and this is our view, which is that if there is no real state action going on or continuing to go on, right, there's no the state isn't publishing these results of past FAR examinations failures. It's only publishing the passes. The state isn't giving these out to employers because under the state judiciary law they're not allowed to. Then any sort of redress you could have against the state doesn't change what's going on out there in the world. If you had redress against the state. Meaning changing what the state is doing? What the state is doing. Because it seems like she has plausibly alleged that there's something that could be done to redress the injury she's got. The question is, is the injury she's got a result of an ongoing state violation or a past state violation? Does that make sense? Or in your view is this the same analysis? And I'll be curious to hear the other side. It's basically the same analysis. And the only time where it would be different is if this individual had alleged, for instance, that the simple act of maintaining confidential FAR examination records was itself a legal violation. Then in that sort of instance, you might have an instance where they have no standing because it doesn't actually injure them for somebody to keep confidential FAR examination records. But in fact there's alleged, at least, ongoing violation of law that somehow keeping confidential records is a violation of law. So there perhaps is some Venn diagram where those two concepts get you to different results. But at least in this case, changing anything with respect to the bars end doesn't help this particular plaintiff. If the Court has no further questions, we urge this Court to adjourn. Thank you. I know you've got limited time, but could you just address that? I mean, are these basically the same tests, the Article III injury, in fact, plus redressability? Is that the same? Or is it different from the Ex parte Young, is there an ongoing violation? Even if maybe there's substantial overlap on a given set of facts, the answer might be yes across the board. But analytically, do we ask the questions the same way? Analytically, in this case, I believe they are somewhat different. I think the question of whether there's prospective harm goes back to what she's alleged, and then there's also the issue of what the individual says. And the prospective harm, because that would seem to me to fit within Article III injury in fact, right? So the question to me is, what do we ask in terms of Ex parte Young? What is the ongoing violation? Is the ongoing violation measured by whether she has enduring injury in fact? No. Okay, so yeah, could you describe that for me? Yes. So the ongoing harm that's prospective, that's continuing, is that the Board of Law Examiners, which is the vault of the truth of whether somebody passed the bar or failed the bar, they are maintaining a record that says that she failed the bar twice. She has alleged that she failed the bar because she was denied accommodation she needed for her disability. And I guess you said the ongoing harm is, and I was asking, what is the ongoing violation? And you seem to be equating harm with violation. Is that, are they the same thing? Not necessarily. And what do you need to, see, I had thought you needed an ongoing violation for Ex parte Young to kick in. Not just the ongoing harm, a residual effect, which may very well be true, from a harm that happened at the time they administered the bar exam. So explain to me why the persistent harm or the maintenance records, I suppose, is an ongoing violation as distinct from the perpetuation of the harm, the injury to her. The ongoing violation is that they are continuing to maintain the record of failures obtained under discriminatory conditions. It is no different than in Constantine where maintaining failures on examinations that were administered without accommodations was an ongoing violation. So that's the action by the agency. Yes. That is married up with the harm for Article III purposes that would give her standing to ask for that violation to stop, I guess. Yes, and the Board of Law Examiners does know exactly what to do when it's maintaining records or has publicly presented records that are false. As we noted in our brief, in 2021, the Board of Law Examiners affirmatively disavowed a report that a candidate had failed the bar when they had not. And so they know exactly what to do. They do understand that there's an ongoing violation. When they maintain the position, they have for seven years in this case that our client did not have a right to accommodations so she could demonstrate her knowledge on the bar exam. I see that I'm out of time. We ask the court to reverse and find that where there's violation of federal law, there is a remedy, particularly in the important context where you have a Harvard Law graduate who just wants to show her skills and talents rather than the limits of her disability. Thank you both, and we'll take the matter under advisement. Nicely argued by both sides. We're going to take a brief recess now. Court stands in recess. If anyone has to put the chair to the judge's side, they can do so now, please. Thank you. Judges of the United States Court of Appeals in the second circuit. Please be seated.  Whatever.